James Frankenfield, pro se
snowman@csac.org
3939 South 6th St 172
Klamath Falls, OR 97603
Tel: (877) 604-0166

FILED'17 MAY 1 12:25USDC-ORM

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## [MEDFORD DIVISION]

JAMES FRANKENFIELD,

     Plaintiff,

v.

REX W. TILLERSON, in his official capacity
as Secretary of State; and

BRENDA SAUNDERS SPRAGUE, in her
official capacity as Deputy Assistant Secretary
for Passport Services, Bureau of Consular
Affairs, US Department of State; and

ADAM E. FOX, in his official capacity as
Consular Section Chief[1], US Embassy Tbilisi,
Georgia and also individually

     Defendants.

Case No.: 1:17 - 00679-CL

COMPLAINT FOR DECLARATORY,
INJUNCTIVE, MANDAMUS AND/OR OTHER
RELIEF

DEMAND FOR JURY TRIAL

---

[1] In various correspondence concerning this matter Mr. Fox has, at different times, signed said
correspondence as "Consular Section Chief", "Acting Consular Chief", "Assistant Chief", and
perhaps other variations. Regardless of such variations he has been the responsible individual.

CIVIL COMPLAINT  – 1

## Complaint for Declaratory, Injunctive, Mandamus, and Other Relief
## Demand for Jury Trial

Plaintiff, **JAMES FRANKENFIELD**, acting pro se, states as follows:

### Introduction

1.      Plaintiff James Frankenfield was born in 1961 in Pennsylvania. His parents are/were both US Citizens by birth as well.

2.      Plaintiff applied to renew his US passport on May 11, 2015 at the United States Department of State consulate in Tbilisi Georgia. Two years later he still resides in Tbilisi with no passport and therefore no ability to travel anywhere. Plaintiff's citizenship is not in question and none of the reasons for denial enumerated in 22 CFR § 51.60 et seq. apply. He has held a US Passport for at least 30 years and his most recent passport was submitted as part of his renewal application as proof of citizenship and identity, per 22 CFR § 51.23(b).

3.       This action is brought to compel Defendants to accept and properly adjudicate Plaintiff's application to renew his United States passport on the basis of eligibility – a duty Defendants owe to Plaintiff. Plaintiff has met the required "preponderance of evidence" standard specified in 7 FAM (Foreign Affairs Manual) 1381.2(b).[2]

4.      This is a civil action brought pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361, the Mandamus Act, to redress the deprivation of rights, privileges and immunities secured to Plaintiff.

---

[2] 7 FAM 1381.2(b) states: "The applicant has the burden of proving his/her eligibility for a U.S. passport, including U.S. citizenship/nationality (22 CFR 51.40) and identity (22 CFR 51.23) by a "preponderance of evidence" standard. This standard means that you must determine that it is more likely than not that the applicant is eligible for a U.S. passport."

5.      Defendants, in violation of the Administrative Procedure Act, 5 U.S.C. § 701, et seq., are willfully and unlawfully withholding and constructively/administratively denying Plaintiff's application to renew his United States passport and have failed to carry out the functions delegated to them by law and regulation in regard to Plaintiff's case.

6.      Defendants have willfully and unlawfully withheld the proper processing of Plaintiff's United States passport application, recklessly and unlawfully denying Plaintiff his constitutionally protected right to travel without affording him his right to due process of law provided for under the Fifth Amendment to the United States Constitution.

7.      In addition to injunctive/declaratory relief this action also seeks damages pursuant to 28 U.S.C. § 1343(a) and Bivens[3]. Plaintiff's rights under the Fifth Amendment to the US Constitution, both substantive and procedural, have been infringed upon by the refusal of Defendant Fox to carry out his ministerial non-discretionary duties. Defendant Fox's actions have been counter to instructions given to Plaintiff by Defendant Sprague and four other State Department agents, not in accordance with the US State Department Foreign Affairs Manual, and counter to the laws and regulations of the United States of America.

### The Parties to this Complaint

8.      Plaintiff James Frankenfield is a United States citizen by birth, who currently resides in Tbilisi, Georgia with no passport. He retains a U.S. mailing address in Klamath Falls, Oregon which was his last place of residence within the United States.

9.      Defendant Rex W. Tillerson is the duly appointed and confirmed Secretary of State for the United States. In this capacity, Defendant Tillerson has the authority to grant and

---

[3] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

issue passports, and cause passports to be granted, issued, and verified in foreign countries by diplomatic and consular officers of the United States, and by such other employees of the Department of State who are citizens of the United States as he may designate. [22 USC. § 211(a)]. Defendant Tillerson is the head of the U.S. Department of State and responsible for setting and overseeing implementation of the policies and procedures employed by the agency and all its various subdivisions, including the Bureau of Consular Affairs. Defendant Tillerson is sued in his official capacity only.

10.     Defendant Brenda Saunders Sprague is the duly appointed Deputy Assistant Secretary for Passport Services, Bureau of Consular Affairs, US Department of State. In her official capacity she oversees the agencies, centers and officers that are responsible for the acceptance, adjudication, and issuance of US passports. Defendant Sprague has the authority to ensure that employees within the Bureau of Consular Affairs - Passport Services act in accordance with her instructions, Department of State Policy and US law. Defendant Sprague is sued in her official capacity only.

11.     Defendant Adam Fox is the consular section chief (or, at times, acting or assistant chief) for the U.S. Department of State embassy in Tbilisi, Georgia. Defendant Fox has the authority and responsibility to accept and adjudicate passport applications from US citizens in the Republic of Georgia. All efforts to resolve this matter have led directly back to Defendant Fox as the final authority. Defendant Fox is sued both in this official capacity and also in his individual capacity for damages.

## Jurisdiction, Venue and Standing

12.     Jurisdiction is proper in this Court pursuant to 28 USC § 1331 (federal question). This Court has jurisdiction to review final agency action pursuant to the APA, 5 USC § 702 ("[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by

agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). Plaintiff has exhausted all administrative remedies.

13.     Jurisdiction is proper pursuant to 28 USC § 1361 under which this Court has the power to compel an officer of the United States to perform his duty.

14.     This action also seeks damages pursuant to 28 USC § 1343(a) and Bivens.

15.     Venue is properly vested in the District of Oregon pursuant to 28 USC § 1391(e) because Defendants are officers or employees of an agency of the United States acting in their official capacities and because this judicial district is where a substantial part of the background events giving rise to the claim occurred, and where Plaintiff maintains his U.S. residency and no real property is involved in the action.

16.     This Court can grant declaratory and injunctive relief under 28 USC § 2201 (declaratory judgment), 28 USC § 2202 (injunctive relief), and 5 USC §§ 701-706, for violations of, *inter alia*, the APA, 5 USC § 706, and because the Defendant's actions are contrary to the Fifth Amendment to the U.S. Constitution. The Court may also compel an officer or employee of the State Department to perform a nondiscretionary duty under 28 USC § 1361 (mandamus relief).

17.     As an individual who has been "adversely affected or aggrieved by agency action," Plaintiff has standing and is entitled to judicial review under the Administrative Procedures Act, 5 USC §§ 702, 706.

18.     Plaintiff has standing under the Mandamus Act, 28 USC § 1361, because he has a clear right to the relief he is requesting.

**Factual Background**

## I. Plaintiff obtained a decree for name change but was arrested by the US Government for using that name, which they do not recognize.

19.     In 2011 Plaintiff Frankenfield filed a name change petition to use the name Greg

Cox in the Superior Court of California, County of Siskiyou. A decree was issued by the Hon.

Laura J. Masunaga on May 17, 2011.[4]

20.     Upon receiving the court decree Plaintiff used the name Greg Cox on a form with

the United States Social Security Agency and was soon thereafter arrested by Special Agent Dale

Ortmann (Office of Inspector General) on allegations of false swearing and felony identity theft.

Agent Ortmann, along with agents and officers from the United States Marshals Service, United

States Customs and Border Protection, Klamath Falls, Oregon police department, and Portland,

Oregon police department, ultimately arrested Plaintiff three times. The first arrest failed to

result in an indictment, leading to the second and third arrests.

21.     The few pieces of unofficial identification which Plaintiff had obtained in the

name Greg Cox were seized by Agent Ortmann during the arrests and have never been returned.

22.     More than two years after the first arrest a firm trial date was set in Klamath

County Circuit Court of Oregon. All charges were dropped in the final 24 hours prior to trial.

They were dropped without prejudice and no explanation has ever been offered for these arrests.

23.     As a result of these arrests Plaintiff was incarcerated for a total of ten days in

various jails, was transported across Oregon in shackles, had his arrest photographs made

publicly available for posting on various websites, and was under the control of the circuit court

---

[4] Superior Court of California, County of Siskiyou, Civil Judgments Vol. 88 Page 943, Case
SCCVPT 11-0463

for two years as though he were presumed guilty. Due to these traumatic implications, the uncertain outcome for over two years, and the resulting fear and terror, Plaintiff Frankenfield continued use of his birth name. This is explicitly permitted under the same body of law which sanctions the change of name to begin with. [CA Code of Civil Procedure: TITLE 8. CHANGE OF NAMES (1275 - 1279.6)][5]

24.     Since the Social Security Agency, on behalf of the US Government, does not recognize the name change decree there is no social security number associated with the name Greg Cox. This renders the name useless for any practical purpose such as banking and taxes, and severs this name from the identity and any and all personal history of the Plaintiff.

25.     In June of 2013 Plaintiff travelled to the Republic of Georgia, where he found employment and chose to reside. He entered Georgia on his previous (now expired) passport in his birth name of James Frankenfield. As a result all records in Georgia, as in the US, are in his birth name – residency permit, multiple bank accounts, employment and tax records, and border control entry/exit records for both Georgia and the US.

---

[5] CA Code of Civil Procedure 1279.6 states: "No person engaged in a trade or business of any kind or in the provision of a service of any kind shall do any of the following:

(a) Refuse to do business with a person, or refuse to provide the service to a person, regardless of the person's marital status, because he or she has chosen to use or regularly uses his or her birth name, former name, or name adopted upon solemnization of marriage or registration of domestic partnership.

(b) Impose, as a condition of doing business with a person, or as a condition of providing the service to a person, a requirement that the person, regardless of his or her marital status, use a name other than his or her birth name, former name, or name adopted upon solemnization of marriage or registration of domestic partnership, if the person has chosen to use or regularly uses that name.

CIVIL COMPLAINT  – 7

**II. Plaintiff applies in Tbilisi to renew his United States Passport, is investigated for five months**

26.     On May 11, 2015 Plaintiff applied to renew his US passport at the consulate in Tbilisi. He applied in his birth name and listed the name Greg Cox under "Other names used" on the application. He was subsequently instructed to apply in this manner by at least three agents of the National Passport Information Center and also (on the record) by Defendant Sprague, director of Passport Services, on a public reddit.com session.[6]

27.     Plaintiff surrendered his previous passport, which has never been returned.[7] (Attached as Exhibit A.)

28.     After a delay of several hours in the waiting area Plaintiff was interviewed by Special Agent Jason Pfistner of the Diplomatic Security Service and Defendant Fox. Agent Pfistner emptied Plaintiff's wallet and found that everything in it was in the name James Frankenfield. Copies of the contents were made.

29.     Plaintiff was unable to obtain any information on the status of his application following May 11, 2015 and requested assistance from Senator Wyden.

30.     On July 17, 2015 Defendant Fox finally replied to the office of Senator Wyden. He stated that the application had been referred to the Regional Security Office for possible fraud. He indicated that he considers the name change to be legal, which is at odds with the Social Security Agency. Defendant Fox made a vague allegation in his email to Senator Wyden that Plaintiff may have violated the laws of the United States and/or the Republic of Georgia.

---

[6]https://www.reddit.com/r/IAmA/comments/5pqezx/i_am_the_deputy_assistant_secretary_for_p assport/

[7] United States Passport #213325266, issued 16 May 2005 as a renewal, expired 15 May 2015

---

31.     Defendant Fox indicated in his July 17, 2015 correspondence to Senator Wyden
that Plaintiffs claim to citizenship was not in question but that "If Mr. Frankenfield is issued a
U.S. passport in the name Greg Cox, this name change may create additional problems for Mr.
Frankenfield when he tries to depart Georgia in a different name then he entered the country."
Plaintiff has never requested that the name Greg Cox be used, and prefers that it not be used.
However, Plaintiff has not at any time challenged the authority of the State Department to make
a final decision on how they wish to label him.

32.     On August 24, 2015 Plaintiff was informed via email by an attorney who had
offered some assistance that the Office of the US Attorney in Portland, Oregon had no interest in
any prosecution related to his name change or his previous encounters with Agent Ortmann.[8]

33.     On August 26, 2015 Senator Wyden's office received, after numerous follow-up
requests, correspondence from DSS Special Agent Jason Pfistner indicating he would schedule a
meeting with Plaintiff in a week or two to try to resolve the issue. Five weeks later, on
September 30, 2015, Plaintiff received a request from the consulate to appear the next day. He
appeared in person on October 2.

34.     On October 2, 2016 Plaintiff was told by Defendant Fox and Agent Pfistner that
they had been waiting for approval from the Social Security Administration and had received
that.[9] They indicated that they were prepared to issue a passport in the name Greg Cox. Plaintiff

---

[8] Federal Criminal Defense Lawyer John Teakell, Dallas, Texas. His response was based on his
calls to the Social Security OIG, Marshals Service, and other offices ultimately including the US
Attorney office in Portland. Agent Ortmann had apparently been reassigned to Idaho at this time.

[9] In December, 2015 Plaintiff filed FOIA/PA requests for documents and information, including
such correspondence, from both the State Department and Social Security in order to clarify their
differences of opinion concerning his name and status. As of the current time these requests have
been completely ignored and it is unknown whether such correspondence addressed the
possibility of (or opportunity for) any future arrests.

was disappointed in this but did not object, accepting that the US State Department does have the authority, and the responsibility, to choose the parameters with which a passport is ultimately issued.

35.    Defendant Fox then returned Plaintiff's application and instructed him to apply in the name Greg Cox, in an effort to remove himself from responsibility for this choice of name. Having been arrested on felony allegations by the US Government for using this name, and not having received recognition of it from the US Social Security Agency, Plaintiff refused. He was offered no explanation for the previous multiple arrests, nor any assurance that such arrests would not happen again. Plaintiff explained that he would not apply in a name he cannot use, nor would he be responsible for a passport which, if lost or stolen, would present heightened security risks since it has no historical identity information associated with it. None of the three credit reporting agencies, nor any identity check companies, are able to find anything with which to verify the name Greg Cox. E-verify is unable to confirm the existence of Plaintiff under this name. Any document in the name of Greg Cox will not sync with law enforcement or other government databases and cannot be supported by any documents generated by other parties. Defendants appear to have the authority to use the name Greg Cox, but the responsibility for that decision is theirs as well.

36.    Plaintiff pointed out to Defendant Fox that 22 CFR § 51.25(c)(5) even permits an applicant to apply in an assumed name of "customary usage" if said name has been used publicly and exclusively for at least five years. The State Department can choose whether or not to accept such a name, but the applicant is clearly permitted to apply under one.[10]

_____

[10] It is ironic that Plaintiff can easily show public and exclusive use of his birth name for 56 continuous years while Defendants would not possibly be able to show such use of the court decree name for even a month.

CIVIL COMPLAINT  – 10

## III. Defendants refuse to adjudicate Plaintiff's application or to provide any due process for one year

37.     Plaintiff continued to receive nothing from Defendant Fox, despite FAM (Foreign Affairs Manual) 1381.2a which states that "The final disposition of all pending passport applications must be issuance, denial, or withdrawal in writing by the applicant. The applicant must be informed in writing of the passport denial". [11]

38.     Plaintiff continued attempting to work through the office of Senator Wyden. Replies from the consulate to the Senator's office often took six weeks or more and Defendant Fox continued to refuse to adjudicate the application as required by FAM § 1380.

39.     In December, 2015 Plaintiff filed Privacy Act / FOIA requests with both the US State Department and the Social Security Administration in hopes of uncovering the true root of the passport problem. As of April 2017 these requests remain unanswered and are presumed to still be pending.

40.     On December 30, 2015 at 1630 hours Plaintiff called the National Passport Information Center (NPIC), explained the background including the arrests, and inquired how he should apply for a passport renewal. The woman put Plaintiff on hold to seek advice and then informed Plaintiff that he could apply in his birth name and this would not be a problem.

41.     On January 6, 2016 at 1430 hours Plaintiff called the NPIC again and spoke to a different woman who identified herself as Ramona. He was told once again to apply in his birth name and to submit his most recent passport (which serves as proof of citizenship and identity per 22 CFR § 51.23(b)). Plaintiff then asked about the "other names used" entry and was put on

---

[11] Until the first week of March, 2017 FAM 1380 was available online at https://fam.state.gov/fam/07fam/07fam1380.html ; however, as of March 10 it had been removed, and shortly thereafter it was removed from the Google cache.

hold for a lengthy time period while Ramona sought clarification. When she returned she told

Plaintiff that the court decree name should be listed in this "other names" section. Finally

Plaintiff asked once again if it would be a problem to apply under his birth name. He was told

this was fine but that the State Department had the authority to decide what name to put in the

passport, regardless of what name he applied under.

     42.    Sometime prior to February 10, 2016 Plaintiff asked the same questions of NPIC

by email and received the same replies as above from agent #2097. On February 10, 2016 at

1600 hours Plaintiff called the NPIC once again to follow up on the email reply. He spoke to

Donna who, as before, replied after seeking clarification that he should use his birth name.

Plaintiff replied via email to agent #2097 to summarize and confirm this information.

     43.    On or about July 14, 2016 Plaintiff sent a fax or email to nine different offices

within the State Department requesting that his application be adjudicated in accordance with

FAM § 1380, the laws of the United States, and legal precedent. Plaintiff requested that if a

passport were not to be issued a written denial be provided, including notification of any due

process available. No substantive response resulted from this, only two referrals back to

Defendant Fox. Mr. Michael Meszaros referred Plaintiff to 22 CFR § 51.70 for due process. This

regulation applies to denials for reasons enumerated by congress; it does not include constructive

or administrative denials. Furthermore, at the time of Mr. Meszaros reference Plaintiff had not

been denied, his application remained pending and unadjudicated.

## IV. Defendants deny Plaintiff's application for failure to provide evidence which was never requested

44.     On September 9, 2016 Plaintiff sent a letter to Defendant Fox demanding that his application be adjudicated or that some due process be provided. Plaintiff informed Defendant Fox that adjudication was clearly a ministerial duty *(Paunescu vs INS 1999, Maciel vs. Rice 2007)* [12] and that by failing to adjudicate the application he was denying the right of Plaintiff to travel, without due process, in violation of the Fifth Amendment of the US Constitution. *(Kent vs, Dulles 1958, Maciel vs. Rice 2007).* (Letter to defendant is attached as Exhibit B.)

45.     On October 3, 2016 Defendant Fox replied that Plaintiffs application was denied for failing to provide requested evidence within 90 days. (Denial letter is attached as Exhibit C.) This appears to be an action described under 7 FAM 1381.2(e)(3). However, that clause of the Foreign Affairs Manual states *"You must deny an application on the basis of insufficient evidence of eligibility if the applicant fails to respond to a request for additional information within 90 days of the date of the initial IRL or request letter.* ***The denial is not based on the failure of the applicant to respond to the request for additional information."*** (Emphasis in original.) No copy of any original IRL (Information Request Letter) was enclosed with the denial (as specified in 7 FAM 1380 et seq.), nor was any claim made that there is insufficient evidence to determine the eligibility of the Plaintiff. Indeed, no specific evidence was ever requested of

---

[12] "Adjudication of an application is ministerial and non-discretionary. The Court is not persuaded by the Government's argument that it can simply choose whether or not to adjudicate a United States citizen's passport application, considering the statutes, regulations, and Constitutional protections implicated." *Maciel vs, Rice, 2007, Hon. Lawrence J. O'Neill*

Plaintiff.[13] The notice of denial does not inform plaintiff of any "procedures for review" as required in 22 CFR § 51.65, if such procedures exist.

46.     On October 5, 2016 Plaintiff sent a letter to Defendant Fox pointing out these discrepancies with the FAM and specifically requesting information on any appeals process. (Attached as Exhibit D.) Senator Wyden's office also requested a response, particularly regarding due process. As of this time no substantive response has ever been received by either Plaintiff or the office of Senator Wyden.

47.     On January 23, 2017 Plaintiff noticed that reddit.com had a question and answer session with Defendant Sprague, Deputy Assistant Secretary for Passport. Plaintiff described the background, including the previous arrests, and asked once again how to apply for a passport renewal. Ms. Sprague gave a reply consistent with the NPIC replies earlier: "*You can put your birth name on your passport application, but you also need to put your court ordered name change in the "other names used" section.*"[14] Defendant Sprague, in her official capacity, has the authority to enforce her response. Defendant Sprague was also asked specifically whether the issuance of US Passports is a ministerial or discretionary function, a question which she declined to address.

48.     On January 23, 2017 Plaintiff received an email response to a complaint that had been filed online with the Office of Inspector General (OIG) on January 19, 2017. The response indicated that no further action would be taken and that the matter had been forwarded to the

[13] An IRL is a highly standardized document prepared in accordance with 7 FAM 1300 Appendix T. Plaintiff never received such a letter at any point. As of March 16, 2017 Appendix T was available online at https://fam.state.gov/fam/07fam/07fam1300apT.html

[14]https://www.reddit.com/r/IAmA/comments/5pqezx/i_am_the_deputy_assistant_secretary_for_passport/?sort=new

appropriate office, which they determined was the Bureau of Consular Affairs, Executive Office. This is the office of Defendant Sprague. It was assigned reference number H20170594. They declined to provide any further contact information for that office.

49.      On January 31, 2017 Plaintiff received an unsigned email from "OCS Information" acknowledging the OIG complaint and reiterating the position of Defendant Fox that Plaintiff had failed to respond. Plaintiff replied inquiring who had prepared the OCS email and on February 1, 2017 learned, via an email response, that it had been prepared by Corina M. Udrea, the country officer for Georgia (and other countries) in the "Office of Overseas American Citizen Services".

50.      At this point Plaintiff has exhausted all possible administrative remedies and still has no passport while residing abroad, after almost two years. As a US Citizen residing abroad this is a serious matter.

51.      Defendants did not identify issues or deficiencies in connection with Plaintiffs passport application other than failing to supply evidence which was never requested and which remains undefined. None of the provisions for denial in 22 C.F.R. § 51.60 apply.  The grounds for refusal asserted by Defendant Fox do not relate to Plaintiffs citizenship or allegiance, or to criminal or unlawful conduct. Plaintiff does not seek to acquire a passport for an unlawful or improper purpose. Plaintiff believes he has met, and exceeded, the "preponderance of evidence" standard specified in the Foreign Affairs Manual concerning eligibility.

52.     Reliance on the relative inaccessibility of the courts to common citizens appears
to be a modus operandi for the State Department Bureau of Consular Affairs, based on a
documented interview by Attorney Bryan Johnson which is available online.[15]

## V. Irreparable Harm Suffered by Plaintiff

53.     By denying Plaintiff a passport, Defendants have wholly deprived Plaintiff access
to any and all means of lawfully exiting the United States (should he be allowed to return to it) or
of traveling anywhere outside his country of residence, thereby denying his constitutional right to
travel. There is a real and actual controversy between Plaintiff and Defendants, and Defendants'
actions are the proximate cause of Plaintiff's injuries.

54.     Plaintiff has suffered and continues to suffer harm, including irreparable harm, as
a direct result of the violations complained of herein, and that harm will continue unless declared
unlawful and enjoined by this Court.

55.     Plaintiff has been unable to return to his own country for 2 years, and continues to
be unable to do so without surrendering his right to live in his country of residence with his job,
fiancé and other personal and professional attachments. His mother in the US is nearly 90 and
alone. He has personal property and business to attend to. Furthermore, plaintiff has been unable
to travel to any countries outside of Georgia for two years for either leisure or business.

56.     Plaintiff has missed professional conferences in the Caucasus region, in Europe,
and in the US.

---

[15] July 9, 2013, in reference to Jonathan Rolbin, Director of Legal Affairs, Bureau of Consular
Affairs-Passport: "Nevertheless, the passport director recently came over from the DOJ and he
has said in meetings: *"Fine, let them sue us."* Because his law enforcement background is that he
knows that these people don't have the resources to sue us..."
https://amjolaw.com/2013/07/18/state-department-whistleblower-reveals-shocking-policy-of-
depriving-individuals-of-their-birthright-to-u-s-citizenship/

57.     Plaintiff has suffered irreparable damage to his personal and family relationships.

58.     Plaintiff has experienced severe and lasting emotional and mental distress including but not limited to embarrassment, fear, anxiety, nervousness, stress, and depression. This distress has manifested itself physically as well, and plaintiff suffers from a variety of symptoms, including but not necessarily limited to frequent severe headaches and chronic debilitating fatigue.

59.     Upon information and belief, Plaintiff has also faced, and will continue to face, adverse employment consequences because the government maintains and disseminates information and records about his felony identity theft arrests on one hand and his passport denial for using his birth name on the other hand.

60.     Upon information and belief, Plaintiff could be arrested and detained again if he attempts to use his court decree name as the Defendants insist. Customs and Border Protection participated in one of his prior arrests, and if they were to request secondary identification in the court decree name plaintiff would not be able to provide any. This possibility continues to instill terror in the mind of the Plaintiff, particularly concerning any return to the United States even with a passport.

## Claims for Relief

61.     In addition to the claims for relief under federal law which follow, the Defendants
have acted counter to their own Foreign Affairs Manual. They have also applied California name
change law inconsistently, insisting that one part is valid to the extent that Plaintiffs birth name is
now null and void but at the same time ignoring a related part that permits continued use of a
birth name.[16]

### Count 1: Violation of the Administrative Procedure Act (5 U.S.C. § 706(2)(A))
### (Defendant's Conduct is Willful, Arbitrary and Capricious)

62.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs
of this Complaint as if fully set forth herein.

63.     Pursuant to 22 U.S.C. § 211a, the United States Secretary of State has the power
and authority to grant, issue and cause passports to be granted.

64.     The statutes and regulations confirm that Defendants have a clear duty to process
Plaintiff's renewal application for a United States passport and render a decision based on
eligibility.

65.     Defendants, in violation of the Administrative Procedure Act, 5 U.S.C. § 701, et
seq., are willfully and unlawfully withholding and/or unreasonably delaying and denying
Plaintiff's passport renewal and have failed to carry out the administrative functions delegated to
them by law and regulation in regard to Plaintiff's case.

---

[16] California Code of Civil Procedure TITLE 8. CHANGE OF NAMES [1275 - 1279.6]

66.     Defendant's actions described above were and are willful, arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity, and should be declared unlawful pursuant to 5 U.S.C. § 706.

67.     The adjudication of Plaintiff's passport renewal application based upon eligibility is ministerial and non-discretionary. *See Paunescu v. INS*, 76 F. Supp.2d 896 (N.D. Ill. 1999); *Maciel v. Rice*, 2007 U.S. Dist. LEXIS 95298.

68.     Defendant's conduct amounts to a constructive denial of Plaintiff's United States passport renewal application which relies on factors which Congress did not intend them to consider, fails to consider the previous arrests which are an important aspect of the situation, and is not rationally based on agency policy as articulated in the Foreign Affairs Manual.

69.     Defendants have therefore denied the Plaintiff his constitutionally-protected liberty interest to travel, without due process, in substantive and procedural violation of the Fifth Amendment to the United States Constitution, as interpreted by the United States Supreme Court in *Kent v. Dulles*, 357 U.S. 116 (1958).

70.     Plaintiff, as a US citizen, has a clear right to the relief sought.

71.     Plaintiff has exhausted any administrative remedies that may exist, and no other adequate remedy is available to him.

72.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by the State Department's arbitrary and capricious conduct and the agency action must therefore be set aside and permanently enjoined.

CIVIL COMPLAINT  − 19

**Count 2: Violation of the Administrative Procedure Act (5 U.S.C. § 706(2)(C))**

**(Defendant's Conduct Exceeds the Authority Delegated by Congress)**

73.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

74.     The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

75.     Pursuant to the Passport Act of 1926, 22 U.S.C. § 211a, Defendant Tillerson has the power and authority to grant and issue passports, and cause passports to be granted by those acting under him. Any exercise of delegated powers to curtail or diminish personal freedoms, such as the freedom to travel or the freedom to define and express one's identity, must be construed narrowly.

76.     The Passport Act of 1926, 22 U.S.C. § 211a, does not expressly or implicitly authorize Defendants to refuse to issue a passport unless and until the applicant uses a particular name. Plaintiff has used his birth name in good faith and with no mal intent.

77.     The final agency action by the State Department against Plaintiff in constructively denying a passport to a US citizen is unlawful and *ultra vires*.

78.     No provision of law purports to authorize such authority by the State Department to impinge on Plaintiff's personal freedoms, nor could any law do so constitutionally.

79.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by the State Department's exceeding its authority delegated by Congress, and its agency action must therefore be set aside and permanently enjoined.

**Count 3: Violation of the U.S. Constitution, Amendment V**

**(Defendant's Conduct Violates Plaintiff's Fundamental Constitutional Right to International Travel and to Due Process; Compensable under Bivens)**

80.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

81.     The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). In addition, this Court has authority under 28 U.S.C. § 1331 and its traditional powers of equity to declare invalid and enjoin agency action that violates the Constitution.

82.     Where a Complaint contends that agency action offends the Constitution, and for that reason should be set aside, the Court affords no deference to the agency but instead reviews the constitutional issues independently.

83.     The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law[.]" The Due Process Clause has a substantive component that provides heightened protection against government interference with fundamental rights and liberty interests.

84.     The right to international travel and freedom of movement without undue government restriction is one of the fundamental liberty interests protected by the Due Process Clause of the Fifth Amendment.

85.     Defendants' refusal to issue a U.S. passport to Plaintiff impermissibly infringes upon Plaintiff's fundamental right to movement, including Plaintiff's fundamental right to travel.

86. Defendant's actions as described above in refusing to properly adjudicate, based on eligibility, Plaintiff's application to renew his United States passport deprives Plaintiff his constitutionally protected liberty interest to travel without due process in violation of the Fifth Amendment to the United States Constitution, and will continue to do so if Plaintiff is not afforded the relief requested below. *See Kent v. Dulles*, 357 U.S. 116, 125 (1958).

87. This count is compensable under Bivens.[17]

**Count 4: Writ of Mandamus (28 U.S.C. § 1361)**

88. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

89. Plaintiff's claims—as set forth above— are clear and certain.

90. Pursuant to 22 U.S.C. § 211a, the Defendant Tillerson has the power and authority to grant and issue passports, and to cause passports to be granted by those acting under him. Moreover, Defendants' official duty to properly adjudicate Plaintiff's passport application based on eligibility, subject to 22 CFR § 51.60 et seq., is nondiscretionary, ministerial, and free from doubt. *See Paunescu v. INS*, 76 F. Supp.2d 896 (N.D. Ill. 1999); *Maciel v. Rice,* 2007 (U.S. Dist. LEXIS 95298)

91. Defendant's conduct amounts to a constructive denial of Plaintiff's United States passport renewal application.

92. Plaintiff has exhausted any administrative remedies that may exist, and no other adequate remedy is available to Plaintiff.

[17] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

93.     Pursuant to 28 U.S.C. § 1361, Plaintiff is entitled to mandamus relief compelling Defendants to properly accept and adjudicate Plaintiff's application for a U.S. passport renewal.

**Count 5: Equal Access to Justice Act (5 U.S.C. § 504 and 28 U.S.C. § 2412)**

94.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

95.     If Plaintiff prevails, Plaintiff will seek legal fees and costs under the Equal Access to Justice Act (EAJA), as amended 5 U.S.C. § 504 and 28 U.S.C. § 2412.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

A. Accept jurisdiction over this action;

B. Issue a declaratory judgment that Defendants' constructive denial of Plaintiff's application for a U.S. passport (a) constitutes agency action that is arbitrary and capricious in violation of the Administrative Procedure Act, (b) constitutes agency action that exceeds statutory jurisdiction and authority in violation of the Administrative Procedure Act, and (c) violates Plaintiff's constitutional rights;

C. Issue a writ of mandamus compelling Defendants to accept and properly adjudicate Plaintiff's passport application in a manner consistent with the applicable burden of proof of eligibility;

D. Award compensatory damages in an amount to be proven at trial;

E. Award punitive damages in an amount to be proven at trial;

F.  Award damages, attorney's fees, costs, and expenses of all litigation, pursuant to 5

U.S.C. § 504, 28 U.S.C. § 2412 and 28 U.S.C. § 1343(a); and,

G.  Grant all such other and further relief as the Court may deem just and proper.


## Jury Demand

NOW COMES Plaintiff, acting pro se, and hereby demands trial by jury of the above-referenced

causes of action.

## Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an improper
purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or
reversing existing law; (3) the factual contentions have evidentiary support or will likely have
evidentiary support after a reasonable opportunity for further investigation or discovery; and (4)
the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers
may be served, if not electronically. I understand that my failure to keep a current address on file
with the Clerk's Office may result in the dismissal of my case.

Dated: 04/26/2017                          Respectfully submitted,



James Frankenfield, pro se
snowman@csac.org
3939 South 6th St 172
Klamath Falls, OR 97603
Tel: (877) 604-0166


CIVIL COMPLAINT  – 24

**Exhibit A – Plaintiffs previous expired passport**



**Exhibit A – Plaintiffs previous expired passport**

## Exhibit B – Letter to State Department – p. 1

September 9, 2016

US Consulate, Tbilisi, Georgia:

I am writing concerning my application to renew my passport which has been pending for over one year, since May of 2015. I believe this matter should be addressed by Mr. Fox, if the responsible person has changed please let me know who it is and when it changed.

I need to know your intentions regarding adjudication of this application.

The courts have ruled that adjudication is a ministerial function and not discretionary.[1] *(Paunescu vs INS 1999, Maciel vs. Rice 2007)*. The court rulings may very well be the reason for 7 FAM 1381.2a which very clearly states that "The final disposition of all pending passport applications must be issuance, denial, or withdrawal in writing by the applicant."

My position is simply that, as a US citizen, I have a right to have my application adjudicated. If you have a basis for denial then please do so formally and follow proper procedures so that there is a well defined due process through which I can pursue an appeal and judicial review. If the application is not denied then please issue a passport in one form or another using the authority you have to make any necessary decisions.

If you have no intention of adjudicating my application please clearly inform me of that choice so that I can continue to pursue a legal resolution, up to and including a request from the court for a writ of mandamus ordering Mr. Kerry to fulfill his ministerial duty.

By failing to adjudicate my application you are denying my right to travel without due process, in violation of the Fifth Amendment of the US Constitution. *(Kent vs, Dulles 1958, Maciel vs. Rice 2007)*. I have been denied this constitutional right, without due process, for approximately 16 months now.

I would also like to clarify two things that have arisen in my efforts to resolve this matter.

Two officials in Washington have stated that I was asked to come to the consulate last September, implying that the matter was in my hands as though I did not appear. I came to the consulate on October 2 and have emails to the consulate and to Senator Wydens office documenting that. Unfortunately the application remains unadjudicated. Please make sure that your records, all of them, reflect the fact that I appeared in person on October 2, 2015. Apparently this is not clear.

---

[1] "Adjudication of an application is ministerial and non-discretionary. The Court is not persuaded by the Government's argument that it can simply choose whether or not to adjudicate a United States citizen's passport application, considering the statutes, regulations, and Constitutional protections implicated." *Maciel vs, Rice, 2007, Hon. Lawrence J. O'Neill*

## Exhibit B – Letter to State Department – p. 1

## Exhibit B – Letter to State Department – p. 2

In my most recent response Mr. Meszaros referred me to  22 CFR 51.70 for the appeal process. 22 CFR 51.70 implies a denial under 22 CFR 51.60(b)(1) through (10), 51.60(c), 51.60(d), 51.61(b), 51.62(a)(1), or  51.62(a)(2). I have never received any official notice of denial and I am not under the impression I have been denied, other than constructively. It appears that Mr. Meszaros is confused about either the status of the application or the appeals law, or both. If he is not mistaken and the application was denied I need proper notification of this.

Without proper and final adjudication I have no clear appeals process, or even a decision to appeal or to seek judicial review of. Your constructive denial is depriving me of fundamental rights without the due process which would be afforded in the case of a proper denial citing the reasons and indicating the appeals procedure. This has been addressed by the court in Maciel vs. Rice 2007.[2]

I would appreciate a prompt reply as this situation has already persisted far too long.

Sincerely,

James Frankenfield
U.S. Citizen

---

[2] "First, the Government enacted regulations to provide a procedure for written notice, hearing and appeal in situations where an application is denied. (22 C.F.R. §Part 61, subsection F.) These regulations suggest that Mr. Maciel has a right, at the least, to have his application adjudicated. Second, Congress provides a denied applicant the ability to pursue declaratory relief in the federal courts. See, 8 U.S.C. §1503. Refusal to adjudicate his passport application denies Mr. Maciel a clear right provided by Congress." – Maciel vs. Rice, 2007, Lawrence J. O'Neill

## Exhibit B – Letter to State Department – p. 2

# Exhibit C – Denial Letter



*Embassy of the United States of America*

October 03, 2016

Dear Mr. Frankenfield:

The United States Embassy Consular Section is denying your passport application due to the failure to present the required evidence.

During the interview, the Consular Officer explained that you need to execute a new passport application in your legal name of Mr. Greg Cox.

The U.S. passport application may be held in suspense for 90 days, pending receipt of the evidence requested. The requested evidence was not submitted within the required time period, therefore the passport application is denied. By law, the passport execution and application fees are non-refundable.

Sincerely,

Adam E. Fox
Vice Consul
U.S. Embassy Tbilisi

# Exhibit C – Denial Letter

## Exhibit D – Response to Denial Letter

October 5, 2016

Mr. Adam Fox
Vice Consul, US Consulate, Tbilisi, Georgia

Dear Mr. Fox,

I am in receipt of your passport denial letter dated October 3. However, it does not appear to conform to the specifications given in the Foreign Affairs Manual (FAM).

It appears that your denial falls under 7 FAM 1381.2(e)(3) – "Applicant Fails to Respond to a Request for Additional Information and/or Documents within the Standard Ninety (90) days."

It states very clearly in Part A that *"The denial is not based on the failure of the applicant to respond to the request for additional information."* This is even in bold text. It indicates that "You must deny an application on the basis of insufficient evidence of eligibility", yet I have not been informed of any problem determining eligibility. I was informed over a year ago that there is no doubt concerning my citizenship, and none of the reasons for denial set forth by congress in 22 CFR 51 appear to apply.

In Part B it clearly and succinctly indicates that "A denial letter stating the specific reason(s) why the passport will not be issued, and enclosing the initial IRL (or post equivalent), must be sent to the applicant." I cannot seem to find a copy of any Information Request Letter. Perhaps you would be so kind as to provide a copy of that, since it was not included in accordance with this section of the FAM.

In Part C it states that "It is important to ensure that the applicant understands what type of evidence is needed." This is in fact not clear to me at all. You have demanded a new application in a name of your choice, as you apparently refuse to recognize my birth name at all. Aside from that nothing has been requested that could be considered evidence which would be related to determining eligibility. I'm sure my confusion will be cleared up by the initial IRL since 7 FAM 1300 Appendix T indicates that these are highly standardized to ensure clarity and a lack of confusion.

The above issues notwithstanding, I would appreciate instructions for any appeal process. If there is no appeal process please clearly inform me of that fact so that I can proceed to seek declaratory relief.

I also respectfully request that you expedite your reply to this correspondence. It has frequently taken weeks, sometimes months, to get a response. You are continuing to deny me my rights as a US citizen and this situation needs to be resolved quickly at this point, beginning with the issues above.

Thank you for your prompt response,

Jim Frankenfield
US Citizen

## Exhibit D – Response to Denial Letter