James Frankenfield, pro se
snowman@csac.org
3939 South 6th St 172
Klamath Falls, OR 97603
Tel: (877) 604-0166

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

[MEDFORD DIVISION]

| | |
|---|---|
| JAMES FRANKENFIELD,<br><br>    Plaintiff,<br><br>    v.<br><br>REX W. TILLERSON, in his official capacity as Secretary of State; and<br><br>BRENDA SAUNDERS SPRAGUE, in her official capacity as Deputy Assistant Secretary for Passport Services, Bureau of Consular Affairs, US Department of State; and<br><br>ADAM E. FOX, in his official capacity as Consular Section Chief[1], US Embassy Tbilisi, Georgia and also individually | Case No.: 1:17-00679-CL<br><br>PLAINTIFF FRANKENFIELD'S REPLY TO DEFENDANTS RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION AND/OR RELIEF PER 5 USC § 705 |

---

[1] In various correspondence concerning this matter Mr. Fox has, at different times, signed said correspondence as "Consular Section Chief", "Acting Consular Chief", "Assistant Chief", and perhaps other variations. Regardless of such variations he has been the responsible individual.

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable page limitation under LR 7-2(b) because it contains less than 35 pages, inclusive.

/s/ JamesFrankenfield

James Frankenfield, pro se
snowman@csac.org
3939 South 6th St 172
Klamath Falls, OR 97603
Tel: (877) 604-0166

## INTRODUCTION, FACTUAL BACKGROUND

Plaintiff incorporates by reference the original complaint (ECF 1) and the Motion for Preliminary Injunction (ECF 30).

The Motion for Preliminary Injunction was filed on August 14, 2017. Defendant's response was filed after 14 days on August 28, 2017. During these 14 days Defendants requested oral argument which was held before the Honorable Ann L. Aiken on August 29, 2017. Defendants also requested that Plaintiff retract his motion (see ECF 35-1). Unfortunately it was the motion for a preliminary injunction that precipitated any action at all on this matter on the part of Defendants, and for this reason Plaintiff continues to pursue this remedy.

Also during the 14 day response time Defendants requested documentation from Plaintiff. Despite their reference to this as "new evidence" it is nothing that was not available to them over two years ago. Defendants have now decided that they may (or presumably may not) issue a passport to Plaintiff if he reapplies and pays another fee. At the oral argument hearing it was agreed that Plaintiff will file another application and pay another fee in Tbilisi, Georgia and that Defendants will adjudicate this new application. It is unclear why a different conclusion would be reached this time if both applications are adjudicated based on the same rational basis and the same available information.

A second hearing has been set for October 2, 2017. In the meantime Plaintiff is filing this reply prior to the original deadline lest it still be necessary at or following the second hearing.

## REPLY TO DEFENDANTS RESPONSE

### I – Response is based on Faulty Premises

Defendant's response in opposition to Plaintiff's Motion for a Preliminary Injunction is premised on several faulty bases: (1) That Plaintiff is demanding that his passport be issued in a particular name; (2) That a solution requires a one-way one-time passport to the US and a change of name on the part of the Plaintiff; (3) That identity and name are synonymous; and (4) That insufficient documentation has been made available. These premises all lack merit.

### II – Plaintiff Has Been And Remains Willing Accept a Passport in Any Name

Right off the bat Defendants claim Plaintiff is demanding a passport specifically and only in his birth name. (ECF 34, page 2, ¶ 1) While Plaintiff believes the best decision would be to use his birth name he has not demanded this, nor refused to accept a passport in any other name. (See Complaint, ECF 1, ¶ 34)

Plaintiff does insist on applying in his birth name, which he has a right to do. His name change was executed in California, and CA Code of Civil Procedure 1279.6 states:

> "No person engaged in a trade or business of any kind or in the provision of a service of any kind shall do any of the following:
>
> (b) Impose, as a condition of doing business with a person, or as a condition of providing the service to a person, a requirement that the person, regardless of his or her marital status, use a name other than his or her birth name, former name, or name adopted upon solemnization of marriage or registration of domestic partnership, if the person has chosen to use or regularly uses that name.

In *Abdul-Jabbar v. General Motors Corp., 85 F. 3d 407 - Court of Appeals, 9th Circuit 1996* the court stated that:

"Ones birth name is an integral part of one's identity"

and:

"An individual's decision to use a name other than the birth name – whether the decision rests on religious, marital, or other personal considerations – does not therefore imply intent to set aside the birth name, or the identity associated with that name."

Plaintiff's decision to use his birth name results from multiple arrests by the Social Security Administration on allegations of felony identity theft, fraud and false statements. (Complaint, ECF 1, ¶ 20-23; See also Exhibit A.)

While Plaintiff Frankenfield quickly abandoned the court decree name and exercised his right to use his birth name for all pre-existing and new elements of his identity he does accept that the Defendants may disagree, and that they have the authority to use whatever name they see fit in the passport which they issue. In fact Plaintiff views this not only as within their authority but also as their responsibility. The Foreign Affairs Manual, in *7 FAM 1310 Appendix C*, indicates that the name which best identifies the applicant must be determined. Plaintiff was instructed by Defendant Sprague and others to apply in his birth name (Complaint, ECF 1, ¶ 26, 47) and told that Defendants would determine the actual name to use. Presumably that which best identifies him, in accordance with *7 FAM 1310 Appendix C*.

Plaintiff has been asked if he would accept a passport in his court decree name and answered that he would.

Plaintiff does have concerns over the problems that are likely to arise if a passport is issued in a name which is unrecognized by other federal agencies. The Social Security Administration considered use of the court order name to be identity theft (see Exhibit B), and to

this day they have not associated it with any social security number. This creates many problems and means Plaintiff cannot possibly use this name for many things, including banking. Defendant Fox also clearly stated that he was concerned about the ability of Plaintiff to leave Georgia in a name other than the birth name. In his July 17, 2015 correspondence to Senator Wyden Defendant Fox wrote that "If Mr. Frankenfield is issued a U.S. passport in the name Greg Cox, this name change may create additional problems for Mr. Frankenfield when he tries to depart Georgia in a different name then he entered the country." (Complaint, ECF 1, ¶ 31)

While Plaintiff does not object to a passport in any particular name he does assume that the Defendants will ensure that his passport is accepted by all federal agencies and does not present further problems or lead to the necessity for additional legal action.

## II – Name Change not Required; One Way Passport Not Acceptable

Defendants have indicated a willingness to provide an emergency passport good for one one-way trip to the United States. Plaintiff finds this unacceptable. He has an established life in Tbilisi, Georgia but family and interests in the United States as a citizen born there. Plaintiff has a fiancé in Tbilisi, and separation from family members constitutes an irreparable injury. *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (en banc). Plaintiff should not be forced to choose between family abroad and family in the United States.[2]

Defendants have suggested, particularly during oral argument, that Plaintiff needs to return to the United States on an emergency passport and then change his name back to his birth name. Such a name change may be desirable at the earliest convenience but it is not required for

---

[2] Some may argue that a fiancée is not family. Unfortunately one irreparable injury resulting from the persistence of the instant matter for 2.5 years has been the inability of Plaintiff to further discuss or pursue the legal formalization of this relationship in Georgia. As a quasi-stateless person, for the time being anyway, any discussion of formal marriage seems ill advised.

a solution to the instant problem. The alleged need for this appears to assume Plaintiff is demanding a passport in his birth name. A second name change would presumably help Defendants carry out their decision-making responsibility. However, as argued above, Plaintiff is not demanding any particular name be used on the passport and agrees that the authority and responsibility for that decision lies with Defendants.

    The name change decree is legal in the state of California[3] and Plaintiff is not unwilling to use that name as long as all agencies, officials, and agents of the federal government and the Republic of Georgia honor it. Currently this is not the case. The Social Security Administration considers Plaintiffs true identity to be associated with his birth name (see Exhibit C.) Furthermore, although they have not had occasion to make a formal decision or statement on the matter, Customs and Border Protection personnel participated in the third arrest of Plaintiff. If these other agencies will honor and accept whatever passport is issued by Defendants, and Defendant Fox's concerns over departing (and presumably re-entering) Georgia are addressed, then Plaintiff will be satisfied with the situation.

    Plaintiff is not opposed to legally changing his name back to his birth name at the earliest convenient time. However, there are issues of venue, process and time that need to be considered. A second name change is not a necessary or practical solution to the instant case.

---

[3] As 7 FAM 1300 Appendix C points out, "Name change is as a matter of law in the United States and its territories governed by state and local law". It goes on to state that a passport may (not must) be issued in the new name in order to serve "the important function of allowing the applicant to have all of his or her identity evidence in the same name." It should be pointed out that in this case Plaintiff has all other aspects of his identity associated not with the name change but with his birth name.

### III – "Name" and "Identity" are not Synonymous

Defendants confuse "name" and "identity" throughout their response. A name or names are but one aspect of a person's identity. People commonly change names for any of a large number of reasons. This does not mean they are changing their identity. Arguing that citizenship can be determined but identity cannot is disingenuous. Each one is a part of the other.

In Abdul-Jabbar v. General Motors Corp., 85 F. 3d 407 - Court of Appeals, 9th Circuit 1996 the court stated that:

> "An individual's decision to use a name other than the birth name – whether the decision rests on religious, marital, or other personal considerations – does not therefore imply intent to set aside the birth name, or the identity associated with that name."

In the instant case Plaintiff has not set aside his birth name or the associated identity by executing a name change under the laws of the state of California. This does not preclude Defendants from choosing to label his identity using that name change if they determine it is in their best interest to do so.

### IV – Sufficient Documentation has been Available

Defendants, in their response, claim that Plaintiff did not submit adequate documentation. However, no additional documentation was ever requested. Furthermore, Plaintiff was under investigation for up to five months and this included some level of collaboration with the Social Security Administration. The investigation reports of SS Agent Ortmann contain a great deal of documentation concerning the identity of Plaintiff.

Plaintiff applied in his birth name because this is the name he uses, exclusively, to identify himself. It is also the name he was instructed to apply in by Defendant Sprague as well

as agents of the Passport Information Center. (Complaint, ECF 1, ¶ 40-42, 47) Plaintiff submitted his previous passport as evidence of citizenship and identity.

Plaintiff did not submit any evidence for any other name. After a long wait he was interviewed by Special Agent Jason Pfistner of the Diplomatic Security Service and Defendant Fox who produced a copy of his name change decree and amended birth certificate. Plaintiff was interviewed and answered all questions concerning the name change and affiliated events, including the multiple arrests. Agent Pfistner asked Plaintiff if he could make a copy of the contents of his wallet and Plaintiff agreed. The contents, including a residency card, business cards, and credit cards, were all in the name James Frankenfield and were all copied. This information is not in the administrative record provided by Defendants but was certainly available to them at and since the time of application.

After applying for his passport in Tbilisi Plaintiff was unable to get any information concerning the status of his application.[4] He turned to the office of Senator Wyden for assistance. Defendant Fox eventually replied to Chris Meier in the Senator's office and indicated that Plaintiff "may have broken laws" of both the United States and Georgia and was under investigation. (Complaint, ECF 1, ¶ 30) Plaintiff was later informed that the consulate had been waiting for information or clearance from the Social Security Administration, so it is clear that the two agencies collaborated and shared information.

When SS Agent Ortmann arrested Plaintiff he inventoried all identification. This is documented in his reports for each arrest, which were surely available to the State Department. In the course of a multi-month investigation this information should certainly have been shared.

---

[4] The State Department was having computer problems at this time which apparently affected all overseas applications. Therefore Plaintiff assumed for a certain amount of time that this was the reason for any delay.

PLAINTIFF'S REPLY - MOTION FOR A PRELIMINARY INJUNCTION – 9

Almost all information which Agent Ortmann documented was in the name James Frankenfield. Only a few unofficial ID items had been obtained in the court order name and those were seized. Those items included a community college ID card and a World Passport (which is only accepted by two or three countries). He also found a copy of the amended birth certificate of Plaintiff at some point. These items were seized and never returned, even upon request following the dismissal (without prejudice) of all charges.

The Foreign Affairs Manual (*7 FAM 1300 Appendix T*) specifies very clearly how additional documentation should be requested using an Information Request Letter (IRL). No such request has ever been received by Plaintiff.

Plaintiff was recently asked to provide evidence that he uses his birth name. This request was not very specific, nor was it cast in terms of any legal framework such as an IRL. Plaintiff sent a few documents to Defendants counsel electronically and was then asked to take them to the consulate. Plaintiff printed out these items and submitted them locally, expecting some action would be taken based on them. Instead the consulate sent them back to Washington D.C. electronically and he was subsequently told to submit an entirely new application and pay another fee.

Defendants have had plenty of documentation since the beginning and have never requested anything specific from the Plaintiff.

**FACTORS SUPPORTING A PRELIMINARY INJUNCTION**

**I – Plaintiff Is Likely to Prevail on Merit (or can raise serious questions going to the merits)**

Plaintiff is a US citizen by birth, this is not disputed. Issuance of passports to citizens is a ministerial duty and not discretionary. *(Paunescu vs INS 1999, Maciel vs. Rice 2007, Kent vs Dulles 1958)* Congress has enumerated specific reasons for the denial of passports to citizens in 22 C.F.R. § 51.60 et seq. and Plaintiff is not being denied for any of these reasons.[5]

Given that Plaintiff is clearly, beyond all doubt, a citizen and that the reasons for denial codified in law do not apply, Plaintiff's claim is likely to ultimately succeed on its merits concerning his right to a passport. The parameters in which to issue a passport need to be determined, but it is inconceivable that he will not be issued any passport at all.

Defendants cite Haig vs.Agee 453 U.S. 280, 307 (1981), claiming that international travel is "subject to reasonable governmental regulation." In *Omar vs. Kerry*[6] the court opined:

> "… neither *Agee* nor *Aznavorian* can be said to have substantively diminished the fundamental nature of the right to travel."

and

> "… recent cases emphasize that the right to travel—including the right to international travel—remains a firmly entrenched right of an American citizen. *See Vartelas v. Holder*, 132 S. Ct. 1479, 1488 (2012) ("Loss of the ability to travel abroad is itself a harsh penalty, made all the more devastating if it means enduring separation from close family members living abroad."); *Eunique v. Powell*, 302 F.3d 971, 973 (9th Cir. 2002) ("It is undoubtedly true that there is a constitutional right to international travel."). "

---

[5] The Secretary of State does not have "unbridled discretion to grant or withhold a passport from a citizen for any substantive reason he may choose," but rather, must do so "pursuant to the lawmaking functions of the Congress". *Kent v. Dulles*, 357 U.S. at 128-29

[6] *Omar vs. Kerry (15-cv-01760, District of Northern California)* Document 52, p.10-11, 16-17

## II – Plaintiff Will Suffer Irreparable Injury without the Injunction

Defendants argue that Plaintiff has forfeited his right to an injunction, and undermined his claim to irreparable injury, by virtue of delay. Plaintiff filed the instant action two years after applying for his passport. This is not inconsistent with other such actions[7]. For approximately five months Plaintiff waited while under investigation. For another year his application was not adjudicated at all and he sought administrative solutions. Eventually he did realize that legal action would be inevitable but time was required to seek counsel, and when that was unsuccessful to prepare a complaint pro se and to file from abroad.

Loss of constitutional liberty interests, for any amount of time, can be considered irreparable harm *prima facie*. (ECF 30, Memorandum in support of motion, page 6.)

Separation from family is also considered, by definition, irreparable harm. *See Vartelas v. Holder*, 132 S. Ct. 1479, 1488 (2012) ("Loss of the ability to travel abroad is itself a harsh penalty, made all the more devastating if it means enduring separation from close family members living abroad.") See also *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (en banc) ("[o]ther important [irreparable harm] factors include separation from family members, medical needs, and potential economic hardship.")

The fact that Plaintiff has tolerated, of perceived necessity, irreparable harm thus far does not mean that such harm is not ongoing and will not continue. In fact, such harm compounds over time since many consequences are cumulative. Furthermore, the risk of irreparable harm has increased dramatically recently due to the medical situation of Plaintiff's elderly mother. This has heightened a risk which was tolerated (of necessity) previously, even if irreparable.

---

[7] See, for example, *Nagy vs. Kerry, 2014, 2:14-cv-13948*, Eastern District of Michigan

### III – The Injunction Will Not Substantially Injure Others

Plaintiff does not seek to acquire a passport for an unlawful or improper purpose. Defendants have not made any claim that their denial is caused by criminal or unlawful conduct.

### IV- Public Interest

Plaintiff has established above that the denial of his passport infringes on his constitutional right to travel and separates him from his family, possessions and economic interests in the United States. The public interest favors issuing the Plaintiff a passport given that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.

### CONCLUSION

The case for a Preliminary Injunction is clear and cannot be overcome by the arguments of Defendants, which are based heavily on meritless and misleading premises. This Court should expeditiously grant the requested injunctive relief.

Dated: September 3, 2017                    Respectfully submitted,


                                            /s/ JamesFrankenfield

                                            James Frankenfield, pro se
                                            snowman@csac.org
                                            3939 South 6th St 172
                                            Klamath Falls, OR 97603
                                            Tel: (877) 604-0166

## **CERTIFICATE OF SERVICE**

I certify that I have on September 3, 2017, served a true and correct copy of this Motion for Preliminary Injunction and Memorandum in Support on the following counsel for all Defendants through the Court's CM/ECF filing system:

    Sean E. Martin, OSB #054338
    Assistant United Stated Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, Oregon 97204-2902
    Sean.martin@usdoj.gov
    Telephone: (503) 727-1010


    /s/ JamesFrankenfield

    James Frankenfield, pro se
    snowman@csac.org
    3939 South 6th St 172
    Klamath Falls, OR 97603
    Tel: (877) 604-0166

# Exhibit A – Social Security Allegations – p. 1



SOCIAL SECUR~~ITY~~ ADMINISTRATION
Office of the Inspector General

~~SOCI~~AL SECURITY
~~Office of t~~he Inspector General

Dale E. Ortmann
Special Agent

2110 Mission Street
Suite 210
Salem, OR 97302

cell: 503 969 1135
Telephone: (503) 399-5653
Fax: (503) 399-5611
E-mail: dale.ortmann@ssa.gov

12:27 11

25 April 2012

SSA/OIG
2110 Mission St. SE, Suite 210
Salem, Oregon 97302

Mark Huddleston
Jackson County
District Attorney
715 W. 10th St.
Medford, Oregon 97501

ATTN:  Deputy District Attorney
       Nicholas Geil

Re:  James ▓▓▓▓▓▓▓▓▓▓▓▓▓
     731 N. 11 St.
     Klamath Falls, Oregon 97601
     OI Case No. POR 12-00039-O

Dear DDA Geil:

The following are the particulars relative to James ▓▓▓▓▓▓▓▓ and the crime of furnishing false information ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in violation of 42 U.S.C. 408(a)(6) (Felony), ORS 165.800 (Identity Theft/Class C Felony), and ORS 162.075 (False Swearing/Class A Misdemeanor).

NAME OF OFFENDERS:    James ▓▓▓▓▓▓▓▓▓▓▓▓

ADDRESS:              731 N. 11th St.
                      Klamath Falls, OR 97601

SOCIAL SECURITY NUMBER:   ▓▓▓▓▓▓▓▓▓

PLACE OF OFFENSE:     Jackson County, Oregon

DATES OF OFFENSE:     September 2011 – April 2012

NATURE OF OFFENSE:    False Statements

RECEIVED
APR 2 5 2012
Jackson County
District Attorney

# Exhibit A – Social Security Allegations – p. 1

PLAINTIFF'S REPLY - MOTION FOR A PRELIMINARY INJUNCTION – 15

## Exhibit A – Social Security Allegations – p. 2

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF KLAMATH

| STATE OF OREGON<br>Plaintiff,<br><br>v.<br><br>JAMES ▮▮▮▮▮▮▮▮,<br>Defendant. | Case No.         1202022CR<br>Police No.       SSA 12-39-O<br>DA No.            12-2663<br>Arresting Officer:  Ortman<br><br>INDICTMENT |
|---|---|

The above-named defendant is accused by Klamath County Grand Jury by this indictment of the following offenses:

**IDENTITY THEFT**
COUNT 1 (ORS 165.800)
Class C Felony
The defendant on or about November 9, 2011, in Klamath County, Oregon, did unlawfully and with the intent to defraud, obtain, possess, transfer, create, utter or convert to the said defendant's own use the identification of Greg Cox; contrary to statute and against the peace and dignity of the State of Oregon.

**FALSE SWEARING**
COUNT 2 (ORS 162.075)
Class A Misdemeanor
The defendant, on or about November 9, 2011, in Klamath County, Oregon, did unlawfully and knowingly make a false sworn statement, to-wit: that his name was Greg Cox when in truth and in fact when his real name was James ▮▮▮▮▮▮; contrary to statute and against the peace and dignity of the State of Oregon.

DATED this __3__ day of __June__, 2013

This indictment returned  ☒ "YES" – A TRUE BILL
          Or           ___ "NO" – NOT A TRUE BILL

_Terri Alexander_
Foreperson of the Grand Jury

Witness subpoenaed and examined before the Grand Jury:
1. Dale Ortman

ROBERT W. PATRIDGE
KLAMATH COUNTY DISTRICT ATTORNEY

BY: _____

IDENTIFIERS: /   / Ht:   Wt:   Hair:   Eyes:   DOB: ▮▮▮▮
731 N 11TH St, KLAMATH FALLS, OR 97601

Page 1 – INDICTMENT, STATE v. ▮▮▮▮▮

## Exhibit A – Social Security Allegations – p. 2

# Exhibit B – Identity Theft Investigation

| | Klamath Falls<br>CRIME / INCIDENT<br>REPORT<br>2501 Shasta Way<br>Klamath Falls, OR 97601<br>OR0180100 | CODE SECTION<br>162.075 | | CASE #<br>1202071 | | |
|---|---|---|---|---|---|---|
| | | CRIME<br>False Swearing | | ☐ ATTEMPT | | |
| | | CLASSIFICATION<br>269 | | | | |

| CASE TYPE | JURIS | BEAT | AREA | OCCURRED | DATE | TIME | DAY |
|---|---|---|---|---|---|---|---|
| CRIMINAL | KFPD | 1 | | ON OR FROM | 04/24/2012 | 13:20 | TUE |
| LOCATION OF INCIDENT | | | | TO | 07/27/2012 | 00:01 | FRI |
| 731 N 11TH ST, KLAMATH FALLS, OR 97601 | | | | REPORTED | 04/24/2012 | 13:20 | TUE |
| PREMISE NAME | | | | PREMISE TYPE<br>Single Family Residence | | | #ENTERED |

ADDITIONAL VIOLATION CODE SECTIONS
165.800        Identity Theft

NATURE OF INCIDENT
☐ Computer Used    ☐ Hate/Bias Motivated    ☐ Child Abuse          ☐ Canvas Neighborhood   ☐ DHS/Child Welfare
☐ Alcohol Related  ☐ Officer Assault        ☐ Domestic Violence    ☐ Statements            ☐ Use of Force - Capst
☐ Drug Related     ☐ Senior Citizen         ☐ Arson                ☐ Evidence Search       ☐ Use of Force - Taser
☐ Gang Related     ☐ Juvenile               ☐ Use Of Force - Phys  ☐ Burglary

SYNOPSIS:

On April 24th, 2012, I began assisting Special Agent Dale Ortman of the Office of the Inspector General on an investigation of James ███████████, who had fraudulently obtained identification in another name, that being Greg Cox.

| CASE STATUS<br>D | | | DEPARTMENT DISPOSITION<br>DISC | | | |
|---|---|---|---|---|---|---|
| ASSOCIATED CASE NUMBERS | | | OTHER ROUTING | | | |
| OFFICER'S NAME<br>DANIEL, JACK | ID NUMBER<br>43260 | DATE<br>07/27/2012 | SUPERVISOR REVIEW | ID NUMBER | DATE | PAGE 1 |

Printed: 08/23/2012 10:35

# Exhibit B – Identity Theft Investigation

# Exhibit C – Social Security Identity Determination

