James Frankenfield, pro se
snowman@csac.org
3939 South 6th St 172
Klamath Falls, OR 97603
Tel: (877) 604-0166

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

[MEDFORD DIVISION]

| | |
|---|---|
| JAMES FRANKENFIELD, | Case No.: 1:17-00679-CL |
| Plaintiff, | |
| v. | |
| REX W. TILLERSON, in his official capacity as Secretary of State; and | PLAINTIFF FRANKENFIELD'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS UNDER FRCP 12(b)(6) |
| BRENDA SAUNDERS SPRAGUE, in her official capacity as Deputy Assistant Secretary for Passport Services, Bureau of Consular Affairs, US Department of State; and | |
| ADAM E. FOX, in his official capacity as Consular Section Chief[1], US Embassy Tbilisi, Georgia and also individually | |

---

[1] In various correspondence concerning this matter Mr. Fox has, at different times, signed said correspondence as "Consular Section Chief", "Acting Consular Chief", "Assistant Chief", and perhaps other variations. Regardless of such variations he has been the responsible individual.

PLAINTIFF RESPONSE TO MOTION TO PARTIALLY DISMISS – 1

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable page limitation under LR 7-2(b) because it contains less than 35 pages, inclusive.

/s/ JamesFrankenfield

James Frankenfield, pro se
snowman@csac.org
3939 South 6th St 172
Klamath Falls, OR 97603
Tel: (877) 604-0166

# I – INTRODUCTION

Defendants' Motion to Partially Dismiss addresses Counts 3 and 4 of Plaintiff's original complaint. Counts 1 and 2 seek to address agency action under the Administrative Procedure Act and Defendants have not yet responded to those counts. In fact they have used their Motion to Partially Dismiss to postpone such a response. Since Counts 1 and 2 address the Plaintiff's ongoing lack of a passport, and the ongoing irreparable damages that result from that for someone living abroad, the Plaintiff filed a Motion for Preliminary Injunction on August 14, 2017. As a result of an oral argument hearing on August 29, 2017 the Defendants agreed to adjudicate a new application (accompanied by a new fee) and Plaintiff submitted this on September 14, 2017 in Tbilisi, Georgia.

There is some indication that Defendants plan to issue a passport based on this second (identical) application, although this has not yet been done. Should Defendants issue the Plaintiff a passport then Counts 1, 2 and 4 will become moot and Defendants Tillerson and Sprague will no longer be relevant. In this case Plaintiff would like to amend his complaint.

The Hon. Judge Ann L. Aiken will hold another oral argument hearing on October 2 if necessary and the preliminary injunction matter will be resolved on or shortly after that date. The court may wish to wait a short time to give consideration to this Motion to Partially Dismiss until it is known whether Defendants are issuing a passport or not.

# II - ISSUE TO BE DECIDED

At issue is whether the complaint states a claim which may potentially be granted relief under *Bivens*.

Rule 12(b)(6) "establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test". *United States v. Baxter Int'l, Inc. 345 F. 3d 866 (11th Cir. 2003)*.

Thus the issue is merely whether the factual allegations made by Plaintiff are sufficient.

## III - FACTUAL BACKGROUND

Plaintiff incorporates by reference the original complaint (ECF 1), his motion for a preliminary injunction (ECF 30), and his reply to defendant's response to the motion for preliminary injunction (ECF 38).

Plaintiff James Frankenfield was born in 1961 in Pennsylvania. In May of 2011 Plaintiff obtained a state-court decree for a name change in California. Upon using this name on a federal form he was promptly arrested on allegations of identity theft by agents of the United States Government. He was ultimately arrested three times over a two year period, although all charges were dropped without prejudice immediately prior to trial. No social security number has ever been attached to the court order name. Plaintiff ceased using the court order name after being arrested three times, jailed for 10 days, transported across Oregon in shackles, and having his "mug shot" posted on various unscrupulous websites. He continues to live in fear of these things happening to him again should he use the court-order name in a jurisdiction other than California.

On May 11, 2015 Plaintiff Frankenfield applied to renew his US passport at the United States Department of State consulate in Tbilisi Georgia. He applied in his birth name and listed the court order name under "Other Names Used". He was instructed to apply in this manner by

PLAINTIFF RESPONSE TO MOTION TO PARTIALLY DISMISS – 4

four agents of the Department of State Passport Information Center and also by directly by defendant Sprague. He also has a right to label his identity with his birth name per CA Code of Civil Procedure 1279.6 and *Abdul-Jabbar v. General Motors Corp., 85 F. 3d 407 - Court of Appeals, 9th Circuit 1996.* (See ECF 38 p.4-5 of instant case.)

Over two years later (29 months) he still resides in Tbilisi with no passport and therefore no ability to travel anywhere for any reason. Plaintiff's citizenship is not in question and none of the legislated reasons for denial enumerated in 22 CFR § 51.60 et seq. apply. He has held a US Passport for at least 30 years and his most recent passport was submitted as part of his renewal application as proof of citizenship and identity, per 22 CFR § 51.23(b).

Defendant Fox did not identify issues or deficiencies in connection with Plaintiffs passport application other than failing to supply evidence which was never requested[2] and which remains undefined. The grounds for refusal asserted by Defendant Fox do not relate to Plaintiffs citizenship or allegiance, or to criminal or unlawful conduct. Plaintiff does not seek to acquire a passport for an unlawful or improper purpose.

The US Department of State maintains, and supposedly follows, an extensive Foreign Affairs Manual (FAM). Since this governs all passport adjudication it goes a long way towards ensuring equal protections to all citizen applicants. In the instant case the FAM was not followed on several occasions and numerous sections and clauses were violated by Mr. Fox. Therefore Plaintiff was treated differently from others who apply for passports, including others with name changes. There was no rational basis for this difference in treatment.

---

[2] Defendant Fox has insisted that Plaintiff must apply in his court order name, effectively arguing that his birth name is null and void. This is counter to California law and at odds with the application instructions given by defendant Sprague as well as four other agents of the State Department. This does not constitute *evidence* of any kind, and nothing has been requested in a proper formal manner using an IRL (Information Request Letter) as specified in the Foreign Affairs Manual (FAM).

PLAINTIFF RESPONSE TO MOTION TO PARTIALLY DISMISS – 5

On August 14, 2017 Plaintiff moved the court for a preliminary injunction (ECF 30). Defendants responded on August 28, 2017 (ECF 34) and, at their request, oral arguments were heard by the Hon. Ann L. Aiken on August 29, 2017. Plaintiff agreed to submit a new (identical) application and pay a second fee and defendants indicated they may issue a passport based on this application. Since the outcome remains unknown Plaintiff has filed his reply which is also pending (ECF 38). Judge Aiken has scheduled a second hearing on the preliminary injunction for October 2, 2017.

Plaintiff submitted his second application at the Tbilisi consulate on September 14, 2017 and adjudication is currently pending. It is not clear whether Mr. Fox is involved in this second adjudication or not, nor is it yet clear whether a different conclusion will be reached based on the same information and documentation. If the outcome changes the legal landscape significantly Plaintiff requests leave to file a surreply or to amend his complaint, should either of those actions be appropriate.

## IV – LEGAL STANDARD

In reviewing a Rule 12(b)(6) motion the United States Supreme Court requires a two part analysis.[3] *Ashcroft v. Iqbal, 556 U.S. 662 (2009); Edwards v. A.H. Cornell & Son, Inc., 610 F.3d 217, 219 (3rd Cir. 2010).* First, "a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions," and second, "a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff has a "plausible claim for relief." *Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3rd Cir. 2009)* (quoting *Iqbal, 556 U.S. at 679*). The court noted that as part of the analysis, "a court must

---

[3] Cited from *Lacey Townsend v. Eastern Specialty Finance, Inc., No. 13-1403 (District of Delaware, February 12, 2015)*

PLAINTIFF RESPONSE TO MOTION TO PARTIALLY DISMISS – 6

accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff." *Erickson v. Pardus, 551 U.S. 89, 94 (2007); Phillips v. Cnty. Of Allegheny, 515 F.3d 224, 231 (3rd Cir. 2008).* The court explained that the determination to be made is "not whether the non-moving party will ultimately prevail," but whether there are "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary elements]." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

For a complaint alleging a *Bivens* claim to survive a motion to dismiss, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Iqbal, 556 U.S. at 676*. The court must then assess the remaining facts or allegations themselves to determine if they are consistent with lawful conduct, in other words, could be explained as an official lawfully carrying out his duties. *Cf. Iqbal, 556 U.S. at 679-80; Twombly, 550 U.S. at 567*.

## V - SEPARATION OF FACTUAL AND LEGAL ELEMENTS

In the first part of the United States Supreme Court's two part analysis "a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions," *Op. Cit*.

The Plaintiff's claim and subsequent pleadings present the facts of the case. No legal conclusions are intended at this time pending possible action on the pending preliminary injunction and the results of discovery.

Defendants' motion is based on legal conclusions only and does not dispute any of the material facts of the case.

Plaintiff will primarily address the second part of the analysis concerning facts as a plausible claim for relief. If Plaintiff, acting pro se, has misunderstood this two part analysis, or is incorrect in viewing FRCP 12(b)(6) as a pleading standard and not a legal standard, he hereby requests leave to file a surreply or to amend his complaint in order to properly address those issues.[4]

## VI – PLAINTIFF HAS PROPERLY ALLEGED COGNIZABLE CLAIMS

The facts clearly show a claim on which relief can be granted. Defendant Fox, through his own individual actions, has abrogated Plaintiffs clear constitutional right to travel. Defendant's actions were not in accordance with the Foreign Affairs Manual of the State Department or with the laws of the United States.

In their response to Plaintiffs' motion for Preliminary Injunction the Defendants cite *Haig v. Agee 453 U.S. 280, 307 (1981),* claiming that international travel is "subject to reasonable governmental regulation." The *Agee* case was in the context of national security and foreign policy, and to attempt to apply this to the instant case is disingenuous. In *Omar vs. Kerry*[5] the court opined:

> "… neither *Agee* nor *Aznavorian* can be said to have substantively diminished the fundamental nature of the right to travel."

and

> "… recent cases emphasize that the right to travel—including the right to international travel—remains a firmly entrenched right of an American citizen. *See Vartelas v. Holder*, 132 S. Ct. 1479, 1488 (2012) ("Loss of the ability to travel abroad is itself a harsh penalty, made all the more devastating if it means enduring separation from close family

---

[4] The proper course of action may also depend on the resolution of the pending Preliminary Injunction matter which is expected prior to or shortly following an October 2, 2017 hearing.
[5] *Omar vs. Kerry (15-cv-01760, District of Northern California)* Document 52, p.10-11, 16-17

PLAINTIFF RESPONSE TO MOTION TO PARTIALLY DISMISS – 8

members living abroad."); *Eunique v. Powell*, 302 F.3d 971, 973 (9th Cir. 2002) ("It is undoubtedly true that there is a constitutional right to international travel."). "

Plaintiff has a clear constitutional right to international travel, subject only to the restrictions legislated by congress in 22 CFR § 51 or regulation (per *Agee*) which is narrowly tailored to a specific national interest. No allegations under 22 CFR § 51 have been made and there is no claim that any specific and narrow national interest is involved.

Plaintiffs' constitutional right to international travel has been abridged by Defendant Fox through his individual actions. The State Department maintains and extensive and detailed Foreign Affairs Manual (FAM) which guides agency decisions. Defendant Fox ignored numerous sections of the FAM, and therefore acted individually and was not merely lawfully carrying out his duties.

In failing to follow the FAM Defendant Fox has failed to afford Plaintiff the equal protection which he would have received if his application had been adjudicated in the same manner as all others which, presumably, are in fact handled in accordance with the FAM. Without the application of the agency policies articulated in the FAM, which are intended to apply to all and provide equal protection from any injustice such as the loss of constitutional rights, the denial of Plaintiff's passport application must be considered an individual action and not an agency action.

The facts, which have not been disputed, clearly show that Defendant Fox, acting individually but under color of law, deprived Plaintiff of his constitutional right to travel for well over two years. He was not lawfully carrying out his duties given that he ignored the State

Department FAM, the directives of congress concerning passport denial, and the laws of the United States.

## VII – RELIEF CAN BE GRANTED

The facts establish constitutional violations under the 5th amendment including deprivation of the right to travel, deprivation of due process and failure to provide equal protection. The court can provide relief for violations of the United States Constitution. Whether any such relief will actually be granted and the success of the claim on legal grounds is not at issue at this time as part of the FRCP 12(b)(6) pleading standard.

In *Davis v. Passman, Supreme Court No. 78-5072 (1979)* the court wrote:

"The Constitution, on the other hand, does not "partake of the prolixity of a legal code." *McCulloch v. Maryland, 4 Wheat. 316, 407 (1819).* It speaks instead with a majestic simplicity. One of "its important objects," *ibid.*, is the designation of rights. And in "its great outlines," *ibid.*, the judiciary is clearly discernible as the primary means through which these rights may be enforced. As James Madison stated when he presented the Bill of Rights to the Congress:

> "If [these rights] are incorporated into the Constitution, independent tribunals of justice will consider themselves in a peculiar manner the guardians of those rights; they will be an impenetrable bulwark against every assumption of power in the Legislative or Executive; they will be naturally led to resist every encroachment upon rights expressly stipulated for in the Constitution by the declaration of rights." *1 Annals of Cong. 439 (1789).*

"At least in the absence of "a textually demonstrable constitutional commitment of [an] issue to a coordinate political department," we presume that justiciable constitutional rights are to be enforced through the courts. And, unless such rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights."

Bivens actions "are context specific". *Wilson v. Libby,* 489 F.Supp. 2d 74,86 (D.D.C. 2007), *aff'd,* 535 F.3d 697 (D.C. Cir.2008). It would be inappropriate to dismiss a case based on another superficially similar case, let alone a significantly different case.

Defendants cite *Western Radio Services Co. v. U.S. Forest Service, D. Or. 6:04-cv-01346-AA, ECF 105 p. 11* and *Occupy Eugene v. U.S. General Services Administration, No. 6:14-cv-747-AA (D.Or. 2015)* as examples of cases where a Bivens claim was dismissed in favor of the APA as an alternative remedy.

These two cases are fundamentally different from the instant case. Both involved discretionary permitting, and in both cases the emphasis was on an administrative solution. Both made First Amendment claims with arguably tenuous claims for damages. Neither involved the kind of direct, egregious and personal attack on basic constitutional rights that could be equated in any way to a US citizen living abroad being denied all rights of travel for any reason – family, professional, personal, or other.

In Western Radio the Bivens claim was dismissed because "the APA provides an alternative and comprehensive remedy to protect plaintiffs' interest in compelling government action".[6] *Western Radio Services Co. v. U.S. Forest Service, D. Or. 6:04-cv-01346-AA, ECF 105 p. 11* In the instant case in Count 3 Plaintiff seeks damages from an individual for his violations of the constitution, including punitive deterrent damages, under Bivens and not agency action. Agency action is addressed in claims 1 and 2 on the basis of the APA.[7] "Bivens established that

---

[6] It should be noted that Western Radio was not dismissed under FRCP 12(b)(6) and survived that motion. It was later dismissed for the reason quoted from the opinion of Judge Aiken.
[7] As of September 18, 2017, there is some indication that the agency will issue Plaintiff his passport based on a new application (identical to the first) adjudicated in accordance with agency policy. This agency action, if it should occur, is clearly separate from the previous denial which

PLAINTIFF RESPONSE TO MOTION TO PARTIALLY DISMISS – 11

the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green, Supreme Court No. 78-1261 (1980) II*.  "Punitive damages are "a particular remedial mechanism normally available in the federal courts," *Bivens, 403 U.S., at 397*, and are especially appropriate to redress the violation by a Government official of a citizen's constitutional rights."  *Carlson v. Green, Supreme Court No. 78-1261 (1980), 446 U.S. 14, 22 (citing Bivens).*  In *Linlor v. Polson, E.D.Va. 1:17-cv-00013-JCC-JFA p.11 (2017),* in consideration of whether 49 U.S.C. §46110(c) provides an adequate alternative to the Bivens claim which he upheld, the Hon. Judge James C. Cacheris wrote "Plaintiff seeks compensation from a past wrong, not prospective relief from considered agency action. The statute Defendant cites is simply inapplicable to the case at bar."

There is no indication that Congress ever intended the APA to be "an alternative remedy explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective as specified." *Carlson v. Green, Supreme Court No. 78-1261 (1980) II* (*Citing Bivens, at 39 and Davis v. Passman at 245-247*.) Congress surely did not intend for each and every violation of constitutional rights that could fall under the APA to be precluded from accountability and deterrence through damages, including punitive damages. Such an interpretation would condone any and every case in which a government agent/employee intentionally denies a citizen their rights for an extended period of time. If any Government-official could take such actions with impunity our constitutional rights would become meaningless.

---

was an individual action by Defendant Fox. Counts 1 and 2 addressing agency action would become moot; Count 3 against Defendant Fox individually for damages would not.

PLAINTIFF RESPONSE TO MOTION TO PARTIALLY DISMISS – 12

## VIII – MANDAMUS COUNT

Plaintiff's complaint requests, in Count 4, that the court issue a mandamus to properly adjudicate his passport application. Defendants' motion incorrectly implies that the mandamus request is to grant him a passport in a particular name. This is not what plaintiff requests, he requests that the application be adjudicated properly. Such adjudication could result in a passport being issued in any name defendants choose, or a denial for reasons specified by congress.

Adjudicating a passport application is ministerial, which is apparently not in dispute. Issuing a passport to a citizen is also non-discretionary, with the possible exception of specific and narrowly focused situations involving foreign policy or security. An application can only be denied for reasons legislated by congress and not because of an inability or unwillingness to make a necessary decision or other arbitrary or constructive reasons. *Kent v. Dulles, 357 U.S. at 128-29*. Defendants may use their discretion in their choice of name and other parameters in which to issue a passport, but they do not have the discretionary authority to deny a passport for reasons not specified by congress.

A mandamus compelling defendants to do their job and follow the laws of congress is within the scope of authority of the court, should they find this necessary. Plaintiff does not assume the court will take such action lightly and in fact assumes it will not be necessary. However, the court should not relinquish its authority to use a mandamus should it ultimately prove necessary in this case or a future one. The court should also use caution in making any declaration concerning how much discretion the State Department has in issuing passports to confirmed citizens considering the statutes, regulations, and Constitutional protections implicated.

PLAINTIFF RESPONSE TO MOTION TO PARTIALLY DISMISS – 13

## IX - CONCLUSION

To survive a motion to dismiss under FRCP 12(b)(6) a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl.Corp. v. Twombly, 550 U.S. 544, 570 (2007)*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556)*. The determination to be made is "not whether the non-moving party will ultimately prevail," but whether there are "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary elements]." *Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556)*.

The complaint alleges facts that lead to a reasonable inference that Defendant Fox is liable for abrogating the constitutional rights to travel, due process, and equal protection of the Plaintiff. Plaintiff's Bivens claim for damages is based on a cognizable claim for alleged violations of his 5th Amendment rights and interests. Enough facts have been presented to raise a reasonable expectation that discovery will reveal necessary evidence. Plaintiff's claim should not be dismissed at this stage of the proceedings under FRCP 12(b)(6).

If the court finds that Plaintiff, acting pro se, has insufficiently pled how Defendant Fox violated Plaintiff's rights, or the nature of those violations, or that Plaintiff has not articulated his cognizable legal theory clearly enough, then Plaintiff requests leave to amend his complaint, pursuant to FRCP 15. Likewise, if Defendants issue a passport and Counts 1, 2 and 4 become moot the Plaintiff requests leave to amend his complaint to eliminate those counts as well as the Defendants not sued individually. The Supreme Court has determined that leave to amend should be "freely given" in the absence of reasons such as bad faith, undue delay, dilatative motive by moving party, and undue prejudice. *Foman v. Davis, 371 U.S. 178, 182 (1962)*. In the Ninth

Circuit it is an abuse of discretion to deny leave to amend in the absence of any of the above reasons. *Keniston v. Roberts, 717 F.2d 1295 (9th Cir. 1983).*

Dated: September 18, 2017                Respectfully submitted,

/s/ JamesFrankenfield

James Frankenfield, pro se
snowman@csac.org
3939 South 6th St 172
Klamath Falls, OR 97603
Tel: (877) 604-0166

PLAINTIFF RESPONSE TO MOTION TO PARTIALLY DISMISS – 15

# CERTIFICATE OF SERVICE

I certify that I have on September 18, 2017, served a true and correct copy of this Motion for Preliminary Injunction and Memorandum in Support on the following counsel for all Defendants through the Court's CM/ECF filing system:

>Sean E. Martin, OSB #054338
>Assistant United Stated Attorney
>1000 S.W. Third Avenue, Suite 600
>Portland, Oregon 97204-2902
>Sean.martin@usdoj.gov
>Telephone: (503) 727-1010

/s/ JamesFrankenfield

James Frankenfield, pro se
snowman@csac.org
3939 South 6${}^{th}$ St 172
Klamath Falls, OR 97603
Tel: (877) 604-0166